**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHAPTER KRIS JACKSON, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | No. 26-09005-MC-W-BP |
| _____ | ) | |
| CHAPTER KRIS JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RACHEL GOSSETT and JORDAN | ) | |
| BESWICK, Co-Trustees of the Jackson Family | ) | |
| Trust – Trust A, and Irrevocable Trusts B and | ) | |
| C, Established January 7, 1999, as Amended, | ) | |
| *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER (1) ADOPTING REPORT AND RECOMMENDATION, (2) WITHDRAWING REFERENCE TO BANKRUPTCY COURT, AND (3) DECLARING INTENTION TO SCHEDULE A JURY TRIAL

The Hon. Cynthia A. Norton, Chief Bankruptcy Judge for this District, has issued a Report recommending that the Court withdraw the reference to Bankruptcy Court in this matter and then, among other things, set the case for a jury trial. The parties have not objected to these two recommendations; they have, however, addressed other aspects of the Report. Below, the Court explains its rulings and decisions regarding the issues discussed in the Report and the parties' responses to it.

# I.  BACKGROUND

## A.  Events Preceding and During the Bankruptcy Proceeding

This litigation arises from a family dispute involving Chapter Jackson (hereafter, "Plaintiff"),[1] her former husband (Christopher Jackson), and her former husband's sister and brother, (Rachel Gossett and Jordan Beswick).[2]  The siblings' parents created a family trust, with three sub-trusts—Trust A, Trust B, and Trust C—and named the siblings beneficiaries.  After their father passed away, their mother "exercised her right under the trust to amend or revoke Trust A and named Rachel and Jordan as the exclusive beneficiaries and trustees to Trust A.  Christopher was removed as co-trustee and beneficiary to Trust A."  *Gossett v. Jackson*, 2019 WL 1782863, at *2.[3]  However, Christopher had taken trust assets and given some to Plaintiff; he also used trust assets to acquire real property that was later transferred to Plaintiff.  Thereafter, Rachel and Jordan—in their capacities as trustees—obtained judgments against Christopher and Plaintiff to recover those assets.

Plaintiff did not pay the judgments, causing Rachel and Jordan (hereafter the "Petitioning Creditors") to engage in a variety of efforts to collect.  Those efforts led to Missouri, where the California judgments were registered and Rachel and Jordan sought to have a receiver appointed.[4]

---

[1] There are various terms that can be used to refer to the parties because this case arose from a bankruptcy proceeding. For instance, it is also appropriate to refer to Chapter Jackson as "Debtor" or, more precisely, "Putative Debtor." However, given the current procedural posture, the Court believes it is more appropriate to refer to the parties as "Plaintiff" and "Defendants" to avoid confusing the jury.

[2] The Court's brief summary of the underlying family dispute is gleaned from two decisions from the California Court of Appeals: *Gossett v. Jackson*, 2019 WL 1782863 (Cal. Ct. App. Apr. 24, 2019) and *Gossett v. Jackson*, 2022 WL 765516 (Cal. Ct. App. Mar. 14, 2022).  Other facts in Part I are gleaned from the Bankruptcy Court's Orders.  However, the Court's summary omits many details that are not immediately relevant to the issues presently before the Court.

[3] Like the California Court of Appeals, the Court will occasionally refer to the parties by their first names to avoid confusion.  No disrespect is intended.

[4] The cases, filed in the Circuit Court for Jackson County, Missouri, are: *Gosset v. Jackson*, Case No. 1916-CV27615 and *Gossett v. Jackson*, 2216-CV08311.  The Motion for Appointment of Receiver was filed in the first of these two

2

In addition, in November 2023, the Trustees filed a petition to institute an involuntary Chapter 7 bankruptcy proceeding against Plaintiff pursuant to 11 U.S.C. § 303. The Trustees were represented in this effort by Victor Weber of the law firm of Merrick, Baker & Strauss, P.C. (collectively, the "Weber Defendants").

Plaintiff, who has acted *pro se* throughout this litigation, responded by filing a series of motions, including several that, alone or together, sought (1) dismissal of the involuntary petition and (2) damages and other sanctions for the improper filing of the involuntary petition. One of the arguments she raised in favor of dismissal was her contention that the involuntary petition lacked a bankruptcy purpose, as required by case law construing § 303. The Bankruptcy Court held a hearing on January 31, 2024, during which Weber was asked to identify the bankruptcy purpose for filing the involuntary petition. He explained the purpose was "to collect the[ ] debt," which the Bankruptcy Court indicated was insufficient under governing law. Weber then sought, and was granted, additional time to brief the issue. (Bankr. Doc. 111, pp. 17-18.)[5] However, as the Bankruptcy Court later explained once the brief was submitted,

> inexplicably, the Petitioning Creditors have failed to cogently respond to the Court's most important questions under applicable Eighth Circuit authorities: why do the Petitioning Creditors not have adequate state court remedies – given that they have two Missouri state court cases pending in addition to a motion to appoint a receiver filed just shortly before the involuntary petition – and what is the purpose for bankruptcy relief? Notwithstanding that the Petitioning Creditors have filed an astounding 700+ pages of response and exhibits to the Court's Order to Show Cause, the Court can discern no legitimate answer to these fundamental questions.

---

cases, but no action was taken on the motion because soon thereafter the Petitioning Creditors instituted an involuntary bankruptcy proceeding against Plaintiff, and the automatic stay halted the litigation in state court.

[5] "Bankr. Doc. __" refers to a document filed in the Bankruptcy Court. "Doc. __" refers to a document filed in the District Court. All page numbers for documents filed with either court are those generated by the CM/ECF system, which may not correspond to the documents' original pagination.

(Bankr. Doc. 97, p. 4.)  The Bankruptcy Court then made several findings, one of which is particularly relevant to the remaining issues:

> [I]t is crystal-clear to this Court that the purpose of filing this bankruptcy petition against Ms. Jackson was a forum-shopping, litigation tactic.  This Court cannot condone the use of its resources (and the resources of any chapter 7 trustee unfortunate enough to be appointed if the Court were to enter an order for relief) for such tactics.  The actions of the Petitioning Creditors in using the Bankruptcy Code and Rules to seek the same discovery they were seeking in state court prove that assistance with debt collection was the purpose of the involuntary filing.

(Bankr. Doc. 97, p. 6.)  However, instead of granting the Motion to Dismiss based on a failure to satisfy § 303's requirements, the Bankruptcy Court dismissed the involuntary petition pursuant to 11 U.S.C. § 305(a)(1), which provides that a court may dismiss a bankruptcy petition if "the interests of creditors and the debtor would be better served by such dismissal[.]"  At the same time, the Bankruptcy Court noted that if it had reached the merits of the Motion to Dismiss, "the Petitioning Creditors . . . failed to meet their burden to . . . demonstrate[ ] any special need for bankruptcy relief."  (Bankr. Doc. 97, p. 7.)

Finally, the Bankruptcy Court considered Plaintiff's request for damages pursuant to 11 U.S.C. § 303(i), which permits a judgment to be entered in favor of the would-be debtor and against the petitioning creditor(s) if an involuntary petition is dismissed.[6]  First, § 303(i)(1) permits recovery of costs and reasonable attorney fees.  In addition, if the involuntary petition was filed in bad faith, § 303(i)(2) permits the debtor to recover "any damages proximately caused by such filing" and punitive damages.  But the Bankruptcy Court concluded § 303(i) does not apply to dismissals under § 305 and declined to award Plaintiff any relief.  (Bankr. Doc. 97, p. 8.)  Plaintiff appealed, and the Bankruptcy Appellate Panel reversed because, while the appeal was pending, the Eighth Circuit held that relief under § 303(i) is available when an involuntary petition is

---

[6] More specifically, it permits a judgment in the involuntary debtor's favor if (1) the petition is dismissed "other than on consent of all petitioners and the debtor" and (2) "the debtor does not waive the right to judgment under" § 303(i).

4

dismissed pursuant to § 305.  *In re Jackson*, 665 B.R. 395, 398-99 (B.A.P. 8th Cir. 2024) (discussing *Stursberg v. Morrison Sund PLLC*, 112 F.4th 556 (8th Cir. 2024)).

### B.  Events After Remand

In October 2025, the Bankruptcy Court issued an Order that, among other things, set deadlines for completion of discovery, designation of experts, and briefing on dispositive motions. (Bankr. Doc. 184, p. 2.)  By this point, the remaining claims were Plaintiff's requests for (1) damages against the Petitioning Creditors pursuant to § 303(i) and (2) sanctions against the Weber Defendants based on the Bankruptcy Court's "inherent authority," (*e.g.*, Bankr. Doc. 123), which the Court construes (based on the Bankruptcy Court's discussions of the issue) as a request for sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure.

In January 2026, the Bankruptcy Court issued a ruling on several motions.  (Bankr. Doc. 263.)  Some of the rulings are relevant here.  First, the Bankruptcy Court denied Defendants' request for summary judgment on Plaintiff's request for damages under § 303(i)(2) because Defendants identified no evidence in the Record to support their request.  (Bankr. Doc. 263, p. 7.)[7] The Bankruptcy Court also (again) rejected Defendants' argument that attempting to collect a debt either (1) demonstrated an absence of bad faith under § 303(i)(2) or (2) constituted a valid bankruptcy purpose.  (Bankr. Doc. 263, pp. 7-9.)  In this latter discussion, the Bankruptcy Court identified factors to be considered when determining whether an involuntary petition is filed in bad faith:

---

[7] The Court refers to "Defendants" collectively without distinguishing between the Petitioning Creditors and the Weber Defendants.  This should not be construed as holding that the § 303(i) claim is asserted against the Weber Defendants.

1. Whether the involuntary petition's allegations were well grounded in fact,

2. Whether the Petitioning Creditors could have advanced their own interests in a different forum,

3. Whether the Petitioning Creditors used the involuntary bankruptcy proceedings to obtain a disproportionate advantage over other creditors,

4. Whether the involuntary petition was motivated by an improper purpose, such as ill will, malice, or harassment, and

5. Whether a reasonable person would have initiated the petition under the same circumstances.

(Bankr. Doc. 263, p. 7 (citing cases).)  The Bankruptcy Court then reiterated that, with respect to the fourth item on the list, "the collection of debt by a single petitioning creditor is not a legitimate purpose for filing an involuntary petition, in the absence of fraud or some special need for bankruptcy relief." (Bankr. Doc. 263, p. 8 (citing cases).)

Second, the Bankruptcy Court addressed issues related to Plaintiff's damages.  It concluded, based on Defendants' concession, that she was entitled to at least $549.85 for printing and copying costs and granted her partial summary judgment to that extent.  (Bankr. Doc. 263, p. 10.)  With respect to attorney fees, the Bankruptcy Court held Plaintiff could not recover fees for the time she personally worked on the case because she was acting *pro se*, (Bankr. Doc. 263, p. 10), but disputed issues of fact precluded summary judgment to the extent Plaintiff alleged the involuntary petition "interfered with litigation involving [Plaintiff] in California and Texas and caused her additional attorney fees" in connection with those matters.  (Bankr. Doc. 263, p. 11.)

6

Third, the Weber Defendants' request for summary judgment on Plaintiff's request for sanctions was denied for the same reasons Defendants' request for summary judgment with respect to the damage claim under § 303(i)(2) was denied.  (Bankr. Doc. 263, pp. 11-12.)

Fourth, the Bankruptcy Court granted Defendants summary judgment on Plaintiff's request for a fine, concluding that Plaintiff's request was based on criminal statutes that did not provide for a private remedy.  (Bankr. Doc. 263, p. 12.)  Finally, the Bankruptcy Court denied Plaintiff's request to require Defendants to post a bond under 11 U.S.C. § 303(e).  (Bankr. Doc. 263, p. 13.)

Discovery continued, and Defendants later filed an Amended Renewed Motion for Summary Judgment, again seeking summary judgment with respect to whether the involuntary petition was filed in bad faith.  The Bankruptcy Court denied this motion for the same reasons it had before.  (Bankr. Doc. 327, pp. 2-4.)

### C.  The Bankruptcy Court's Report and Recommendations

Meanwhile, Plaintiff filed a Motion to Withdraw the Reference, which asked that the reference to bankruptcy court be withdrawn and the case reassigned to a District Judge for all further proceedings.  The Motion was primarily (if not entirely) based on (1) Plaintiff's assertion of a right to jury trial on her claim for damages under § 303(i) and (2) her refusal to consent to the Bankruptcy Court conducting that trial.  The Bankruptcy Court issued a Report recommending a resolution of this Motion and other matters as well.  Plaintiff and Defendants each filed objections to parts of the Report, and Defendants filed a response to Plaintiff's objection.

The Court has conducted a *de novo* review of the Report and the Orders ruling on Defendants' Motion for Summary Judgment and Amended Renewed Motion for Summary Judgment in light of the parties' objections.  Having conducted this review, the Court will resolve the outstanding issues as necessary below.  In so doing, the Court will not discuss the issues in the

7

order in which they are presented in the Report. The Court further notes that Plaintiff's Objection is more than 90 pages in length and addresses many issues that are not addressed in the Report or have no bearing on the matters that remain to be resolved.[8] The Court will not discuss these topics.

### 1.  Withdrawal of the Reference and Setting for Jury Trial

The Report recommends that the Court (1) determine Plaintiff has a right to a jury trial and that she has not waived that right and (2) on that basis, grant her Motion to Withdraw the Reference and schedule the case for a jury trial. No party objects and the Court independently agrees this aspect of the Report should be adopted. Therefore, pursuant to 28 U.S.C § 157(d) the Motion to Withdraw the Reference is granted, and the Court will schedule the case for a jury trial.

### 2.  The Extent to Which There Has Been a Binding Ruling Regarding Defendants' Bad Faith

Defendants object to a sentence in the Report stating that the Bankruptcy Court "determined that since collection of the debt was the only discernible purpose of the involuntary filing, the Petitioning Creditor had failed to meet its burden to prove that Jackson was eligible for chapter 7 relief." (Doc. 2, p. 4 (footnote omitted).) They contend that this finding might have been relevant to a dismissal for bad faith under § 303(i), but the Bankruptcy Court ultimately dismissed the involuntary petition pursuant to § 305, which did not require a finding of bad faith. They conclude this means the Bankruptcy Court's finding was unnecessary to its decision and thus does not apply throughout the litigation.[9] The Court disagrees and overrules Defendants' objection.

---

[8] The Court granted Plaintiff leave to file her overlength Objections. (*See* Doc. 10.)

[9] Defendants frame this issue as involving the law of the case doctrine, but the Court is not certain this is correct. "We have described the law of the case doctrine as providing that when a court decides upon *a rule of law*, that decision should continue to govern the same issues in subsequent stages in the same case." *First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007) (quotation omitted; emphasis supplied). The Bankruptcy Court's determination that the involuntary petition lacked a bankruptcy purpose was not a determination of law, but rather an application of law to the facts. Regardless, as discussed in the text, the Court concludes this finding was integral to the Bankruptcy Court's decision to dismiss the involuntary petition.

The Bankruptcy Court dismissed the involuntary petition pursuant to § 305(a)(1), which permits dismissal of a bankruptcy petition if "the interests of creditors and the debtor would be better served by such dismissal[.]"  Review of the Order dismissing the case confirms that the lack of a bankruptcy purposes was one of the reasons the Bankruptcy Court found dismissal to be in "the interests of creditors and the debtor."  In fact, it is the very first reason listed in the Order. (*See* Doc. 97, pp. 4-5.)

That said, the lack of a bankruptcy purpose for the involuntary petition does not automatically mean Defendants acted in bad faith; the lack of a purpose is just one factor to consider.  The Court adopts the Bankruptcy Court's explanation (which the Court set forth earlier) that bad faith is determined by considering:

1. Whether the involuntary petition's allegations were well grounded in fact,

2. Whether the Petitioning Creditor could have advanced their own interests in a different forum,

3. Whether the Petitioning Creditors used the involuntary bankruptcy proceedings to obtain a disproportionate advantage over other creditors,

4. Whether the involuntary petition was motivated by an improper purpose, such as ill will, malice, or harassment, and

5. Whether a reasonable person would have initiated the involuntary petition under the same circumstances.

The involuntary petition's lack of a bankruptcy purpose is relevant to the fourth factor.  *E.g.*, *In re Bock Transp., Inc.*, 327 B.R. 378, 382 (B.A.P. 8th Cir. 2005).  In addition, some of the reasons the involuntary petition lacked a bankruptcy purpose are addressed by other factors.  (For instance,

9

the second factor, which asks whether the Petitioning Creditors could have advanced their interests in the proceedings they instituted in Jackson County.)

Thus, the Court overrules Defendants' limited objection. It has been established that the involuntary petition was improper because it lacked a proper bankruptcy purpose, and the issue cannot be litigated in front of the jury. In some form or fashion, the jury will be instructed that this determination has been made and that the jury can consider this finding, along with any other evidence introduced at trial, in determining whether Defendants acted in bad faith.

### 3. *Issues Related to Plaintiff's Damages*

Plaintiff objects to several holdings by the Bankruptcy Court regarding the damages she may recover. These objections are overruled.

First, she objects to the rulings regarding her ability to recover attorney fees. Section 303(ii)(1)(B) allows an award of reasonable attorney fees when an involuntary petition is dismissed even if there is no bad faith by the filing party. Plaintiff cites cases establishing a presumption that fees should be awarded—but in these cases, the involuntary debtor was represented by attorneys to whom fees had to be paid. In contrast, Plaintiff did not incur any attorney fees in the bankruptcy proceeding because she has acted *pro se* throughout, and no case holds that a *pro se* litigant can recover attorney fees. To the contrary, in cases involving other fee-shifting statutes, courts hold that they cannot. *E.g.*, *Kay v. Ehrler*, 499 U.S. 432, 435-37 (1991) (discussing 42 U.S.C. § 1988). The Court thus agrees that Plaintiff cannot recover attorney fees to compensate for the time she has personally spent on this matter.[10]

---

[10] This ruling does not affect the Report's recommendation that the issue of whether Plaintiff can recover for the increased fees she allegedly incurred in other litigation remain open for now.

Second, Plaintiff challenges the Report's "suggestion" that she may not be able to recover emotional distress damages. But the Report does not recommend a ruling regarding Plaintiff's claim for emotional distress damages, so there is nothing for Plaintiff to object to. The Report mentioned these damages as part of the discussion regarding Plaintiff's request that Defendants be required to post a bond in the amount of $7.5 million, but the Report does not recommend a ruling on Plaintiff's request for emotional distress damages. That said, the Court echoes the Bankruptcy Court's observation about these damages:

> The medical records [Plaintiff] has filed with the court show her medical conditions long predated the filing of the involuntary petition. . . . That is not to say that Jackson may not be able to prove to a jury some exacerbation of those health conditions, emotional distress, and other related proximately caused damages as the result of the involuntary filing – assuming she can meet the threshold burden to show that the involuntary was filed in bad faith. But Jackson did not claim the involuntary proceeding was causing such medical damages until after the B.A.P. remanded the case and Jackson did not designate any expert witnesses.

(Doc. 2, p. 22.) The Court also reaffirms the Bankruptcy Court's warning that Plaintiff "w[ill] not be allowed to introduce at trial any evidence that she failed to disclose if disclosure of such evidence was mandated by Fed. R. Civ. P. 26(a)(3)[.]" (Doc. 2, p. 22.)[11]

### 4. Bond

Plaintiff filed a Motion for Bond pursuant to 11 U.S.C. § 303(e), asking the Bankruptcy Court to require the Petitioning Creditors to post a bond of $7.5 million. She objects to the denial of that Motion. The Court has independently reviewed the briefing on Plaintiff's Motion, (Bankr. Docs. 331, 336, and 337), other documents related to Plaintiff's purported damages, (*e.g.*, Bankr. Doc. 123), and Plaintiff's discussion of the issue in her Objection. The Court concludes a bond should not be required.

---

[11] Defendants dispute that the authority Plaintiff cites in her Objection demonstrates emotional distress damages are recoverable under § 303(i), but they do not cite any authority establishing that they are not recoverable. (Doc. 12, pp. 7-8.) The Court makes no decision on the issue at this time.

11

11 U.S.C. § 303(e) provides that when a debtor is seeking damages under § 303(i), "[a]fter notice and a hearing, and for cause, the court may require the petitioners [who filed the involuntary petition] to file a bond to indemnify the debtor for such amounts as" may be awarded under § 303(i). Section 303(e) thus requires the Court to consider the amounts Plaintiff is likely to recover when determining if a bond is necessary to indemnify her for any such award. Here, Plaintiff emphasizes the evidence demonstrating Defendants' bad faith and her requests for significant damages, but even if Plaintiff prevails the Record provides no reason to believe that significant damages are recoverable. The Court has already addressed her request for attorney fees to compensate for her personal time, and Plaintiff has not provided any reason to believe she is likely to recover significant amounts for (1) attorney fees incurred in unrelated cases, (2) emotional distress, (3) other actual damages, or (4) punitive damages and fines. Moreover, while § 303(i) permits a claim against a creditor who institutes an involuntary bankruptcy proceeding, it does not explicitly allow a claim against that creditor's attorney—which means Plaintiff may not be able to assert a § 303(i) claim against the Weber Defendants. (*See* Doc. 2, p. 22 n.69.) This is important because if Plaintiff's claims against the Weber Defendants are based solely on Bankruptcy Rule 9011, then any potential recovery against them cannot be considered when determining if a bond is necessary to secure payment of a judgment under § 303(i). And even if damages recoverable from the Weber Defendants should be considered, the Court notes they are now represented by insurance counsel—demonstrating that there is insurance coverage for the claim and a diminished need for a bond.

Thus, nothing presented to the Court suggests that (1) Plaintiff's damages are as significant as she contends or that (2) there is a need to indemnify Plaintiff for any damages she might be awarded under § 303(i). Therefore, the Court will not require Defendants to post a bond.

12

<u>**5. Other Matters**</u>

There are three other matters raised in Plaintiff's Objection that should be addressed. First, Plaintiff insinuates that the judgments against her are invalid or not final. There is no support for this proposition, and Plaintiff will not be permitted to attack the validity of judgments issued by California (or other) courts in this proceeding. If a judgment has been entered and it has not been reversed, vacated, or set aside, it is valid.

Second, Plaintiff refers to her prior arguments regarding the identity of the real party in interest. The Bankruptcy Court resolved this issue when it said:

> [I]t is clear to the Court that the real party in interest is "Petitioning Creditor, Rachael Gossett and Jordan Beswick, co-trustees of the Jackson Family Trust – Trust A, and Irrevocable Trusts B, and C established January 7, 1999, as amended." Successor Counsel for that party has admitted in writing that the various names by which the Trust has been referred to previously was not done with any intent to refer to a different trust or trusts. Any issue regarding why the Petitioning Creditor's former Counsel used different names for the Trust from time-to-time (whether due to inadvertence, sloppiness, or something else) goes to the issue of good faith of the Petitioning Creditor and potential damages, as does the issue of why only one of the two Co-Trustees – Jordan Beswick – signed the petition; those issues do not go to the issue of who is the real party in interest for purposes of Ms. Jackson's Sanctions Motion.

(Bankr. Doc. 184, pp. 1-2.) The Court discerns no reason to revisit this issue.

Finally, Plaintiff objects to the Bankruptcy Court's dismissal of adversary actions she filed in this case as part of her attempt to include additional defendants. There are several reasons why this issue is not before the Court, and it will mention only one of them. Plaintiff appealed those dismissals to the Bankruptcy Appellate Panel, but the appeals were dismissed. (*See* Doc. 12-1.) Plaintiff cannot relitigate those matters in this proceeding.

### III. CONCLUSION

As discussed above, the Report and its recommendations, (Doc. 2), are adopted by the Court, and the Motion to Withdraw Reference, (Doc. 1), is **GRANTED**. The case will be set for

13

a jury trial.  The Court will issue a separate Order to (1) solicit the parties' input regarding an appropriate date for trial and (2) establish certain pretrial procedures.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
**DATE**:  June 30, 2026         UNITED STATES DISTRICT COURT

14